**SIGNED this 19th day of July, 2011**

John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Joseph Prebul | ) | No. 09-14010 |
| | ) | Chapter 7 |
| Debtor | ) | |
| ——————————————————— | ) | |
| | ) | |
| Danny Bensusan | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adv. No. 09-1139 |
| | ) | |
| Joseph Prebul, *et al.* | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM

This adversary proceeding is before the court on a motion to dismiss filed by Danny

Bensusan, Steven Bensusan, Alliance Investments Group, LLC, 117 Seventh Avenue South Property

Co., L.P., TSE Group, LLC, and DBS International, LLC. Also before the court is a motion to

dismiss filed by Gary D. Chazen. The motions to dismiss seek a dismissal of the Second Amended

Counterclaim/Complaint/Third Party Complaint filed by James R. Paris, chapter 7 trustee for Joseph Prebul, and by Prebul Chrysler Jeep Dodge, LLC, and Carolex, LLC. Having reviewed the motions and supporting briefs, and having considered the arguments of the parties, the court will now make its ruling in accordance with Rule 7012 of the Federal Rules of Bankruptcy Procedure.

## I.

On February 12, 2009, Danny Bensusan brought an action in the circuit court of Hamilton County, Tennessee, against Joseph Prebul, Prebul Chrysler Jeep Dodge, LLC, Carolex, LLC, and others, alleging various wrongdoings with respect to business dealings between the parties. The complaint alleged fraud, conspiracy to defraud and convert assets, breach of fiduciary duty, negligent misrepresentation and supervision, conversion, breach of contract, and promissory estoppel. The case was removed to the district court but later remanded to the state court because of incomplete diversity. On August 28, 2009, the suit was removed to this court.

Bensusan's original claims have been voluntarily dismissed. The only claims currently before this court are those asserted by the Second Amended Counterclaim/Complaint/Third Party Complaint. Thus, for simplicity, this opinion will refer to that pleading as the "Complaint," the parties who filed it as the "Plaintiffs," and the parties against which claims are made as the "Defendants." The court will use the term "Movants" to refer, collectively, to the Defendants and Gary D. Chazen, who is one of the third-party defendants under the Second Amended Counter-claim/Complaint/Third Party Complaint.

The Complaint relates to two different sets of events. Counts I through IV relate to alleged "loans" from the Defendants to Prebul Jeep, Inc. (or Joseph Prebul), some of which are evidenced by promissory notes, copies of which are attached to the Complaint. The Complaint alleges that,

when Prebul Jeep and Joseph Prebul were unable to repay these "loans" upon demand, Mr. Prebul executed a promissory note for $7,641,362.48 in favor of Danny Bensusan. Count I seeks a declaratory judgment that the Plaintiffs have no liability to the Defendants because the promissory note constituted a novation. Counts II-IV of the Complaint are directed at the Defendants' prepetition attempts to collect on the promissory note. These counts allege a civil conspiracy to (a) commit extortion, (b) procure a breach of contract, and (c) intentionally interfere with business relationships of the Plaintiffs.

Counts V and VI of the Complaint relate to TSE Group, LLC, a New York limited liability company with three members: Joseph Prebul, Gary D. Chazen, and DBS International, LLC. Under TSE's operating agreement, DBS was selected as the managing member. Count V alleges that DBS, as well as non-members Danny Bensusan and Steven Bensusan, used managerial authority to engage in "minority oppression" and, accordingly, breached their fiduciary duties. Count VI separately seeks the dissolution of TSE under New York law based upon Mr. Prebul's bankruptcy filing.

The Movants contend that each of the six counts fails to state a cause of action upon which relief can be granted.

Although most or all of the claims are non-core proceedings, *see* 28 U.S.C. § 157(b)(2), the parties have consented to this court's authority to hear and determine and to enter appropriate orders and judgments at least with respect to the motions presently before the court, subject to review under 28 U.S.C. § 158, *id.* § 157(c)(2).

## II.

When presented with a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable in

bankruptcy adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure,

the court must accept all factual allegations in the complaint as true. *Tellabs, Inc. v. Makor Issues*

*& Rights, Ltd.*, 551 U.S. 308, 322 (2007). These factual allegations, however, must be sufficient to

show that the pleader is entitled to relief. As the Supreme Court has explained:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement
> of the claim showing that the pleader is entitled to relief," in order to "give the de-
> fendant fair notice of what the . . . claim is and the grounds upon which it rests."
> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need de-
> tailed factual allegations, a plaintiff's obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do. Factual allegations must
> be enough to raise a right to relief above the speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The Supreme Court went

on to say that there must be enough factual matter to make it plausible that the plaintiff is entitled

to relief, i.e., to "raise a reasonable expectation that discovery will reveal evidence" giving rise to

a right to relief. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "To

survive a motion to dismiss, the 'complaint must contain either direct or inferential allegations

respecting all material elements' of the offense." *Watson Carpet & Floor Covering, Inc. v. Mohawk*

*Indus., Inc.*, Nos. 09-6140, 09-6173, 2011 WL 2462833, at *3 (6th Cir. June 22, 2011) (quoting *Tam*

*Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust Litig.)*, 583 F.3d 896, 902

(6th Cir. 2009)).

In ruling on a motion to dismiss, the court may not consider matters beyond the allegations

pled in the complaint. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). If such

matters are presented but not excluded, the motion to dismiss must be converted to a motion for summary judgment. Fed. R. Bankr. P. 7012(b); Fed. R. Civ. P. 12(d). Despite this bar, the parties have filed numerous factual exhibits in relation to the Complaint. Thus, as an initial matter, the court must determine which exhibits may be considered (and to what extent) and which must be excluded.

In the dismissal context, a court may consider the following without converting a motion to dismiss to a summary judgment motion: "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

The first category, exhibits attached to the complaint, permits consideration of the operating agreement for TSE Group, LLC, the record of its LLC filing, and two promissory notes signed by Joseph Prebul on behalf of Prebul Jeep, Inc. The second category, public records, is more limited. In this category, the court may "take judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). The Movants ask the court to take notice of various filings in Mr. Prebul's criminal case: the information, transcripts, consent order, and judgment. However, the Movants seek to use these documents to establish the accuracy of the facts contained within, *i.e.*, that Mr. Prebul committed certain crimes. This goes beyond the proper use of judicial notice. Accordingly, the court will recognize the existence of the criminal judgment but the documents will otherwise be excluded from the court's consideration.

As for the third category, items appearing in the record of the case, the court may consider the transcript of a prior hearing in this litigation, the prior motion to dismiss, and the prior response to the motion to dismiss. However, the court will not consider Joseph Prebul's Schedule B filed as part of his bankruptcy petition, as that filing was made in a separate case file and is, in any event, irrelevant to the sufficiency of the Complaint. I

The fourth category permits inclusion of documents attached to the motion to dismiss if two conditions are met: (1) the attached documents were referred to in the complaint, and (2) those documents are central to the plaintiff's claim. *Willcox v. Tenn. Dist. Attorneys Gen. Conference*, No. 3:07-cv-359, 2008 WL 4510031 (E.D. Tenn. Sept. 30, 2008). The court finds (and the parties agree) that the court may, under this standard, consider an amended version of the TSE operating agreement and an August 1, 2008, promissory note signed by Mr. Prebul. Additionally, there is authority for permitting the consideration of similar documents attached to a response to a motion to dismiss. Hence, the court will also consider the proposed forbearance agreement, which was referenced in the Complaint and, while not as central as the note and operating agreement, still plays a prominent role in the litigation.

Because the remaining documents do not fall within these categories, the court will not consider them. Thus, in addition to the criminal filings and Schedule B, the court will also exclude from consideration the declarations and affidavits filed by the parties.

### III.

The court first looks to Counts I through IV of the Complaint, which relate to the alleged lending relationship among several of the parties and the collection efforts of the Defendants.

**A.**

Count I seeks a judgment declaring that the Plaintiffs are not liable for any claims previously asserted by the Defendants or for any amounts due pursuant to the 2008 promissory note. At argument on the motions to dismiss, counsel for the Plaintiffs clarified that they take the position that Joseph Prebul's liability is limited to the amount due under the promissory note, and that the other Plaintiffs' liability was discharged by the note. This claim is wholly based on the assertion that the note "constitutes a novation."

The court agrees with the Defendants' argument that the Plaintiffs' allegations are insufficient to plausibly suggest a novation. "A novation is the substitution of a new obligation for an old." *Cumberland County Bank v. Eastman*, No. E2005-00220-COA-R3-CV, 2005 WL 2043518, at *4 (Tenn. Ct. App. Aug. 25, 2005). A novation under New York law requires "(1) a previously valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of the old contract; and (4) a valid new contract." *Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd. (In re Balfour MacLaine Int'l Ltd.)*, 85 F.3d 68, 82-83 (2d Cir. 1996). Tennessee law is similar, requiring "(1) a previous valid obligation, (2) an agreement supported by evidence of intention; (3) extinguishment of the old contract; and (4) a valid new contract." *Cumberland County Bank*, 2005 WL 2043518, at *4. Contrary to the dictates of recent pleadings jurisprudence, the Complaint contains no factual allegations with respect to these elements, but instead baldly asserts that the note "constitutes a novation." This is insufficient. The pleading of bare legal conclusions does not satisfy Federal Rule of Civil Procedure 8(a) and such assertions must be disregarded.

Putting the bare legal conclusion aside, the allegations in the Complaint fail to allege, expressly or inferentially, that all of the parties agreed to a new contract or that the parties intended

the promissory note to extinguish prior obligations. Indeed, the contract was only signed by Joseph

Prebul and related only to obligations owed to Danny Bensusan. There are no factual allegations that

the other Defendants entered into a new contract with the intent that it would discharge prior

obligations. 30 Richard A. Lord, *Williston on Contracts* § 76:12 (4th ed.) ("[I]n order to effect a

novation, all of the parties concerned must have the clear and definite intention to do so by their

agreement.").

Nor does the promissory note itself suggest a "novation," as it fails to even mention any prior

obligations, let alone provide for their discharge. While courts may imply a novation from the cir-

cumstances surrounding a later contract, no such facts and circumstances have been pleaded in the

Complaint.[1] The bare assertion that the 2008 promissory note "constitutes a novation" is insufficient

to demonstrate a plausible entitlement to relief. Therefore, the court will grant the Defendants'

motion to dismiss Count I.

## B.

Count II alleges a civil conspiracy to commit extortion. Like most states, Tennessee has

never recognized a cause of action for civil extortion. *See, e.g., Perry v. Conley*, No. 02A019812-cv-

00369, 1999 WL 270430, at *4 (Tenn. Ct. App. May 5, 1999) ("We know of no statutory or

common law authority-except in states where statutes provide for civil penalties for the crime of

extortion-which would allow [the plaintiff] to recover damages for 'extortion.'"); *Rader v.*

---

[1] The Plaintiffs assert that the requisite intent to create a novation is sufficiently pled because the Complaint refers to Danny Bensusan's unsuccessful collection attempts against Joseph Prebul to collect the note. The Plaintiffs argue that these collection attempts imply an intent to make a novation. The alleged collection efforts, however, including the original complaint in this litigation, were also directed at the allegedly "discharged" obligations and thus provide no support for implying an intention to create a novation.

*ShareBuilder Corp.*, No. 10-398, 2011 WL 1087936, at *5 (D. Del. Mar. 24, 2011) ("Blackmail and

extortion are, in almost all jurisdictions, crimes, not civil causes of action."). Nevertheless, one

Tennessee court has permitted an extortion action to proceed when pleaded as part of a civil

conspiracy. *See Vafaie v. Owens*, No. 92C-1642, 1996 WL 502133, at *7 n.3 (Tenn. Ct. App. Sept.

6, 1996). Accordingly, the court will presume that such an action may be brought where (1) criminal

extortion has occurred, and (2) the elements of a civil conspiracy are present.

The Movants first argue that the criminal extortion elements are lacking because there was

no "wrongful accusation" as shown by Joseph Prebul's eventual criminal plea. T.C.A. § 39-14-

112(a) (defining "extortion" to include "coercion"); T.C.A. § 39-11-106(c)(3)(B) (defining

"coercion"). This argument, however, is premised on the various documents relating to Mr. Prebul's

criminal proceedings and, as discussed above, the court cannot fully consider these items in

connection with the Defendants' motions to dismiss.

Nevertheless, Count II is deficient in a different respect: it fails to allege the facts

establishing the elements of a civil conspiracy. The elements of a cause of action for civil conspiracy

are: "(1) a common design between two or more persons, (2) to accomplish by concerted action an

unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the

conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct.

App. 2006).

The Movants claim that the Plaintiffs have failed to allege a "resulting injury." Although the

Complaint repeatedly alleges that the Plaintiffs were "damaged by the acts and/or omissions of

Danny Bensusan and/or persons or entities associated with Danny Bensusan," the mere recital of

legal elements is not sufficient. *See Kopperl v. Bain*, No. 09-cv-1754, 2010 WL 3490980, at *4 (D.

Conn. Aug. 30, 2010) ("formulaic repetition in each counterclaim of the mantra that [the plaintiffs] 'suffered damages' . . . does not satisfy the pleading requirements of *Twombly* and *Iqbal*"). To survive a motion to dismiss, there must be some factual allegations showing a "resulting injury" from the alleged civil conspiracy.

Generally, criminal extortion statutes fall into two categories: those that punish all extortionate threats and those that punish extortion only when an injurious transfer results. 31A Am. Jur. 2d *Extortion, Blackmail, and Threats* § 35. While Tennessee's criminal prohibition of extortion punishes mere threats, civil conspiracy actions require a "resulting injury." Accordingly, in the civil context, at least some injury must result from the threat. Here, however, there are no specific allegations of harm, economic or non-economic, resulting from the alleged threat. Nor does the Complaint allege the quintessential "extortion" harm, namely, a transfer of value from the victim to the alleged extortionists. Rather, the Plaintiffs merely allege a series of unsuccessful collection threats: that the Defendants threatened to criminally prosecute Joseph Prebul in "efforts to obtain security for and to collect on" the earlier promissory note, to "obtain transfers from Joseph Prebul" at below-market rates, to recharacterize the earlier loans as investments, to "coerce Joseph Prebul" into accepting a forbearance agreement, and to obtain documentation regarding the disposition of Danny Bensusan's earlier transfers to Mr. Prebul. Nowhere in the Complaint are allegations stating that the threats were successful.[2] Quite the contrary, the Complaint is clear that these alleged

---

[2] Nor can the criminal proceedings be considered a relevant injury. Extortion criminalizes the making of the threat itself, not its effectuation. *See, e.g., Duan v. State*, 970 So. 2d 903, 906 (Fla. Dist. Ct. App. 2007) ("Neither the actual intent to do harm nor the ability to carry out the threat is essential to prove that extortion occurred."). To the extent that the criminal proceedings were themselves wrongfully initiated, that would be a different tort.

-10-

collection threats were mere "efforts" and that Mr. Prebul refused to execute Mr. Bensusan's proposed forbearance agreement or otherwise comply with his demands.[3]

Accordingly, the court can find no factual basis alleged in the Complaint that there was a "resulting injury" from the alleged civil conspiracy to commit extortion. The court will therefore grant the Defendants' motion to dismiss Count II.

## C.

Count III alleges conspiracy to procure a breach of contract under the common law and in violation of Section 47-50-109 of the Tennessee Code Annotated, which is itself generally declarative of the common law, *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997). For the common law or statutory cause of action for procuring a breach of contract to lie, "1) there must be a legal contract; 2) the wrongdoer must have knowledge of the existence of the contract; 3) there must be an intention to induce its breach; 4) the wrongdoer must have acted maliciously; 5) there must be a breach of the contract; 6) the act complained of must be the proximate cause of the breach of the contract; and, 7) there must have been damages resulting from the breach of the contract." *Id.*

Count III of the Complaint is rife with deficiencies. First, there are no allegations that any of the Defendants actually *intended* to create a breach; indeed, their palpable intent appears to have been debt collection. Second, the Complaint offers nothing more than a legal conclusion that the Defendants "acted with malice," and pleading an element is not sufficient without factual allegations suggesting the existence of the element. Third, the Complaint contains no allegation of an actual

---

[3] Although the Defendants did obtain the August 2008 promissory note from Joseph Prebul, they obtained it prior to the alleged extortion and the Complaint is clear that Joseph Prebul executed that note as a result of his inability to repay the Defendants.

breach but merely that "[o]ther lenders are claiming [that the plaintiffs] have breached contracts."

Fourth, the Complaint fails to aver causation or harm. Aside from the formulaic pleading of

damages, the Complaint merely alleges that the Defendants sought the transfer of certain assets.

These transfers were never made, however, and so the court cannot conceive how the Plaintiffs

could have suffered any harm in the absence of an allegation of a breach. Hence, the court will grant

the Defendants' motion to dismiss count III.

### D.

Count IV asserts that the Bensusan entities "interfered with prospective business

relationships." Once again, however, pleading mere legal elements is insufficient and this count

contains little else. To state a claim, the plaintiff must make some factual assertions regarding:

> (1) an existing business relationship with specific third parties or a prospective
> relationship with an identifiable class of third persons; (2) the defendant's knowledge
> of that relationship and not a mere awareness of the plaintiff's business dealings with
> others in general; (3) the defendant's intent to cause the breach or termination of the
> business relationship; (4) the defendant's improper motive or improper means; and
> finally, (5) damages resulting from the tortious interference.

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002).

Here, even assuming that other business relationships have been adequately alleged (by

reference to the forbearance agreement), there are no allegations of any intent to interfere, as

opposed to an intent to collect a legitimate debt. Further, since the forbearance agreement never

came to fruition, there is no causation and no assertion of damages (beyond the formulaic pleading).

Accordingly, the court will grant the Defendants' motion to dismiss Count IV.

**IV.**

The Complaint next contains two counts relating to TSE Group, LLC. Count V, entitled "Unlawful Oppression of Minority Interest Holder," alleges that DBS, Danny Bensusan, and Steve Bensusan violated their fiduciary obligations to minority shareholders. Count VI seeks the dissolution of TSE under New York law.

The Movants contend that the bankruptcy estate of Joseph Prebul lacks standing to assert either of these claims because the trustee failed to assume the operating agreement. Alternatively, they raise several individual challenges to the counts. With respect to Count V, the Movants assert that the claim is derivative in nature and fails to comply with the pleading requirements of Federal Rule of Bankruptcy Procedure 7023.1, the rule governing derivative actions brought in bankruptcy courts. Additionally, they assert that the claim, even if direct, was inadequately pleaded and that non-members of a limited liability company cannot be liable for such a claim. With respect to Count VI, they assert that dissolution is not appropriate and, in any event, the dissolution provisions of New York law should not be given effect. The court will address each argument in turn.

**A.**

The Movants argue that a limited liability company's operating agreement constitutes an executory contract and the chapter 7 trustee's failure to assume it within 60 days means that it has been deemed rejected. *See* 11 U.S.C. § 365(d)(1). From this, the Movants conclude that the estate can no longer assert these actions against TSE. The trustee responds by denying that the operating agreement qualifies as an executory contract.

An executory contract has been defined as "'a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to

complete performance would constitute a material breach excusing the performance of the other.'"

*Rieser v. Dayton Country Club Co. (In re Magness)*, 972 F.2d 689, 694 (6th Cir. 1992) (quoting

Countryman, *Executory Contracts in Bankruptcy, Part I*, 57 Minn. L. Rev. 439, 460 (1973)). In the

Sixth Circuit, however, this traditional "Countryman" definition, while it may be helpful, is not

controlling. Instead, courts are also instructed to apply a functional test by "work[ing] backward

from an examination of the purposes to be accomplished by rejection and, if they have already been

accomplished, then the contract cannot be said to be executory." *Id.*

    There are no *per se* rules regarding the classification of limited liability company operating

agreements. Instead, courts individually assess each operating agreement to determine whether its

particular provisions draw it into the purview of § 365. *Meiburger v. Endeka Enters., L.L.C. (In re*

*Tsiaoushis)*, 383 B.R. 616, 618-19 (Bankr. E.D. Va. 2007). Where the operating agreement imposes

no duties or only remote and hypothetical duties, it is not an executory contract. *Id.* at 618-21

(remote future duties); *In re Capital Acquisitions & Mgmt. Corp.*, 341 B.R. 632, 636-37 (Bankr.

N.D. Ill. 2006) (remote future duties); *Movitz v. Fiesta Invs., LLC (In re Ehmann)*, 319 B.R. 200,

203-06 (Bankr. D. Ariz. 2005) (no duties); *In re Garrison-Ashburn, L.C.*, 253 B.R. 700, 708-09

(Bankr. E.D. Va. 2000) (no duties). Conversely, where the operating agreement both requires on-

going capital contributions and imposes management duties, it has often been deemed executory.

*Allentown Ambassadors, Inc. v. Ne. Am. Baseball, LLC (In re Allentown Ambassadors, Inc.)*, 361

B.R. 422, 444 (Bankr. E.D. Pa. 2007); *In re Daughtrey Constr., Inc.*, 188 B.R. 607, 612 (Bankr. D.

Neb. 1995).

    A review of the operating agreement in this case reveals only one possible affirmative duty

imposed on Joseph Prebul: the duty to contribute additional capital when and if deemed necessary

-14-

by the Managing Member in the exercise of his good faith business judgment. Arguably, this could support an "executory" finding if such contributions were regularly required or were expected to be necessary. However, in the context of a motion to dismiss, the court only considers the allegations and attachments, and all reasonable inferences must be drawn in the trustee's favor. Focusing solely on the operating agreement itself, it appears that any such future contribution obligation could be "remote and hypothetical," as in both *Tsiaoushis* and *Capital Acquisitions.* Applying the functional approach of *Magness*, it is difficult to see what purpose would be served by rejection if there are no present obligations to breach and the only future obligation to be avoided is arguably a remote contingency. Suffice it to say that, at this stage of the proceeding, the court cannot conclude that the operating agreement constitutes an executory contract.

## B.

Count V claims that DBS, Danny Bensusan, and Steven Bensusan "engaged in wrongful conduct with regard to TSE." In particular, these Defendants are accused of (1) charging improper expenses to TSE, (2) employing nepotism in hiring and compensation decisions, (3) making inflated payments to Danny Bensusan, (4) inadequate recordkeeping, reporting, and disclosure, (5) failing to explore the marketing of business interests, and (6) failing to make sufficient distributions. According to the Complaint, these actions "breached fiduciary duties owed to persons with minority ownership interests."

The Movants first argue that none of the allegations suggest any duties owed by Danny and Steven Bensusan to the Plaintiffs with respect to TSE. The court agrees. While members of an LLC may owe duties to other members, the Complaint does not allege, and it does not appear from the operating agreement or any other documents that the court may consider, that either Danny or

Steven Bensusan is a member of TSE. Accordingly, the Complaint fails to establish any basis for a claim against these parties with respect to the alleged oppression.

The Movants also seek dismissal of the oppression claim against DBS, the majority and managing member in TSE. In particular, they contend that most of the allegations of wrongdoing were not directed at minority members, but at TSE itself. As such, those claims do not belong to the debtor's estate but to TSE and, in order to be asserted by a member, such claims must be plead in compliance with Federal Rule of Bankruptcy Procedure 7023.1 and Federal Rule of Civil Procedure 23.1. With respect to the majority of the wrongdoing asserted, the court agrees with the Movants. Assertions such as improper charging of expenses, nepotism in compensation decisions, inadequate recordkeeping, and failing to explore the marketing of business interests would all primarily harm TSE itself and impact Joseph Prebul only indirectly, and thus can only be asserted in a derivative action. *See, e.g., Abrams v. Donati*, 489 N.E.2d 751, 752 (N.Y. 1985) ("allegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually").

The trustee does not contest the applicability of the pleading requirements or his non-compliance with those requirements; nor does he make any arguments explaining why his claims should be classified as direct rather than derivative. Instead, the trustee argues that an LLC member has complete discretion over whether to sue derivatively or directly. The case law, however does not support that position. Indeed, *Tzolis v. Wolff*, 884 N.E.2d 1005, 1007, 1009-1010 (N.Y. 2008) appears to stand for the contrary proposition, since the majority in that case implied a right to bring a derivative action against an LLC based, in large part, on their reluctance to conclude that members had no remedies at all for wrongs to the LLC itself. If such members had individual direct actions,

-16-

this concern would not exist. Further, the primary case relied upon by the trustee, *RCGLV Maspeth LLC v. Maspeth Properties LLC*, 910 N.Y.S.2d 408 (N.Y. Sup. Ct. Mar. 25, 2010) (unpublished table decision), *available at* 2010 WL 1133245, an unreported trial court decision, provides no support, as it involved a member seeking relief for individual harm suffered as a secured creditor of the LLC and as a party to the operating agreement with which the defendants were alleged to have tortiously interfered.

Stripped of the derivative claims, few "wrongs" against members remain. First, it has been recognized that the duty of full disclosure is one owed to members, not the limited liability company itself, and can thus support a direct suit. *See, e.g., Bartfield v. Murphy*, 578 F. Supp. 2d 638, 648 (S.D.N.Y. 2008). Additionally, the law appears to be unsettled concerning whether complaints alleging inadequate distributions are derivative or direct. 1 F. Hodge O'Neal & Robert B. Thompson, *Oppression of Minority Shareholders and LLC Members* § 3:5. Since neither party has briefed this particular issue, the court will assume, for now, that such an action can be brought individually.

In order to survive a motion to dismiss, these remaining allegations must provide factual context which, if true, could show that it is plausible that DBS made an attempt to "substantially defeat[] the 'reasonable expectations' held by minority shareholders in committing their capital to the particular enterprise." *In re Kemp & Beatley, Inc.*, 473 N.E.2d 1173, 1179 (N.Y. 1984). However, the statements regarding these possible causes of action are, like most of the Complaint, completely conclusory. No factual detail is provided with respect to the expectations of the minority shareholders, what information was withheld from them, what the distributions were, or why those distributions were insufficient. Without any such factual details giving substance to the bare legal

-17-

averments, this count cannot survive the pleading standard of *Twombly*. Accordingly, the court will

grant the Defendants' motion to dismiss Count V.

## C.

Finally, Count VI of the Complaint seeks the dissolution of TSE pursuant New York law.

The Movants raise several challenges, including (1) whether an LLC member's bankruptcy

mandates dissolution under provisions of TSE's operating agreement and New York law, and (2) if

so, whether those provisions are rendered inoperative by the Bankruptcy Code.

## 1.

Dissolution is sought based on the version of § 701 of New York's Limited Liability

Company Law in effect when TSE was formed. That provision stated:

> A limited liability company is dissolved and its affairs shall be wound up upon the
> first to occur of the following:
>
> (d) the bankruptcy, death, dissolution, expulsion, incapacity or withdrawal of any
> member or only the member, members or class or classes or group or groups of
> members specified in the operating agreement, or the occurrence of any such event
> specified in the operating agreement, or any other event that terminates the continued
> membership of any member, or only such member, members or class or classes or
> group or groups of members specified in the operating agreement, unless within one
> hundred eighty days after such event the limited liability company is continued
> either:
>
> (1) by the vote or written consent of the percentage in interest of the members or
> class or classes or group or groups of members stated in the operating agreement; or
>
> (2) if no such percentage is specified in the operating agreement, by the vote or
> written consent of a majority in interest of all of the remaining members; or
>
> (3) pursuant to a right to continue stated in the operating agreement.

McKinney's Limited Liability Company Law § 701(b) (1999).[4] The Complaint asserts that no such vote occurred following Joseph Prebul's bankruptcy and thus TSE must be dissolved.

The Movants disagree, arguing that Section 701(b) functions as a default rule and the operating agreement opts out by containing "a right to continue." Nevertheless, the court has reviewed the operating agreement and it is far from clear that the default rule has been overridden. There is no explicit statement of "a right to continue." The Movants assert that such a right may be inferred from the operating agreement's provisions for dissolution only upon "the unanimous written consent of all of the Members" or "the expiration of the term of this Agreement." However, these dissolution events do not appear to exclude others. To the contrary, the operating agreement explicitly defines the "term" of the agreement to include dissolution "in accordance with the [Limited Liability Company Law of the State of New York]." As such, the TSE operating agreement seems to contemplate application of Section 701(b). Therefore, the court cannot conclude that the dissolution provision has been overridden.

## 2.

Nevertheless, Count VI fails for a different reason. The Bankruptcy Code generally renders *ipso facto* clauses ineffective. Notably, § 541(c)(1)(B) of the Code provides that "an interest of the debtor in property becomes property of the estate . . . notwithstanding any provision in any agreement . . . or applicable nonbankruptcy law . . . that is conditioned . . . on the commencement of a case under this title . . . and that effects or gives an option to effect a forfeiture, modification,

---

[4] Under current § 701(b), the presumption is reversed and an LLC will continue in existence unless a dissolution vote is taken.

or termination of the debtor's interest in property." The court holds that that provision renders prior

New York law to the contrary inapplicable.

In *Fursman v. Ulrich (In re First Protection, Inc.)*, 440 B.R. 821 (B.A.P. 9th Cir. 2010), the

Bankruptcy Appellate Panel held that § 541(c)(1)(A) –

> overrides both contract and state law restrictions on the transfers or assignment of
> Debtors' interest in [the LLC] in order to sweep their interests into their estate. . . .
> As a result, the trustee was not a mere assignee, but stepped into Debtors' shoes,
> succeeding to all of their rights, including the right to control [the LLC.].

*Id.* at 830. The trustee in this case succeeded to *all* of Joseph Prebul's rights in TSE and, under

§ 363(l), he has "the use and benefit of its interest in the LLC and has the right to continue as a

member of the LLC." *Duncan v. Dixie Mgmt. & Inv., Ltd. Partners (In re Dixie Mgmt. & Inv., Ltd.

Partners)*, Bankr. No. 5:08–bk–73874, Adv. No. 5:10–ap–7184, 2011 WL 1753971, at *2-3 (Bankr.

W.D. Ark. May 9, 2011). The estate would be deprived of the "use and benefit" of that interest if

the provision for dissolution upon bankruptcy were given effect. As one court explained:

> Under section 541(c)(1), provisions of [state] law and provisions of the LLC Articles
> and Agreements which purport to dissolve the LLCs and terminate the debtor's
> interest therein upon the commencement of a bankruptcy case are not enforceable in
> a . . . bankruptcy case. . . . [An LLC does] not dissolve under state law because
> dissolution of the business enterprise is inconsistent with the Bankruptcy Code re-
> quirement of section 541(c)(1) that the debtor's interest not be terminated by
> commencement of a bankruptcy case. As a matter of overriding federal law, the
> LLC[] and the debtor's interest therein continue to exist notwithstanding debtor's
> bankruptcy filing.

*In re Daugherty Constr., Inc.*, 188 B.R. 607, 611-12 (Bankr. D. Neb. 1995); *see Dixie Mgmt. & Inv.,

Ltd. Partners*, 2011 WL 1753971, at *3 (holding that LLC was not dissolved as result of

disassociation of bankrupt member because statutory and contractual disassociation provision was

invalid under § 541(c) and Supremacy Clause). Clauses providing for the dissolution of a limited

liability company upon a member's bankruptcy filing certainly qualify as a "modification" of a

debtor's membership interests within the meaning of § 541(c)(1)(B), as they have "the practical effect of expelling the bankrupt member from the LLC." Thomas F. Blakemore, *Limited Liability Companies and the Bankruptcy Code: A Technical Review*, 13 Am. Bankr. Inst. J. 12, 42 (June 1994). To permit these provisions to operate would defeat the evident purpose of § 541(c). Accordingly, to the extent that prior New York law required dissolution upon bankruptcy filing (absent contrary action by the members), the statute is rendered ineffective by § 541(c)(1). The court will, therefore, grant the Movants' motion to dismiss Count VI.

## V.

For the foregoing reasons, the court will enter a separate order granting the motions to dismiss the Second Amended Counterclaim/Complaint/Third Party Complaint.

###